139 Ariz. 525 (1984)
679 P.2d 548
STATE of Arizona, Plaintiff-Appellant,
v.
BOOK-CELLAR, INC., a California corporation, dba Book-Cellar No. 7/Modern Book Store, Book-Cellar No. 8/Glendale Book Bar and Book-Cellar No. 4/Venus Bookstore, Defendant-Appellee. BOOK-CELLAR, INC., a California corporation, dba Book-Cellar No. 7/Modern Book Store, Book-Cellar No. 8/Glendale Book Bar and Book-Cellar No. 4/Venus Bookstore, Counterclaimant-Appellee,
v.
STATE of Arizona, William E. Farrell, in his official capacity as City Attorney of the City of Glendale and George Renner, in his individual and his representative capacity as Mayor of the City of Glendale, Counterdefendants-Appellants.
No. 1 CA-CIV 6390.
Court of Appeals of Arizona, Division 1, Department C.
January 19, 1984.
*527 William E. Farrell, Glendale City Atty., Glendale, for plaintiff-appellant and counterdefendants-appellants.
Law Office of Richard J. Hertzberg By Richard J. Hertzberg, Phoenix, for defendant-appellee and counterclaimant-appellee.
OPINION
BROOKS, Judge.
At issue is the constitutionality of Arizona's Obscene Movie and Obscene Pictorial Publication Abatement statutes. The trial court found the statutes unconstitutional both on their face and as applied and awarded appellee (Book-Cellar) nominal damages and reasonable attorney's fees.
FACTS
On June 9, 1981, the City Attorney for the City of Glendale brought this action in the name of the State of Arizona seeking to abate an alleged nuisance and to enjoin the maintenance thereof pursuant to A.R.S. §§ 12-811 et seq.[1] The complaint alleged that Book-Cellar sold and/or distributed certain obscene motion picture films and certain obscene pictorial publications. It requested that the trial court issue both a preliminary and a permanent injunction enjoining the maintenance of the alleged nuisance.
On June 11, 1981, the state applied for and obtained an ex parte temporary restraining order from the trial court purportedly pursuant to A.R.S. § 12-814(B) and Rule 65(d), Arizona Rules of Civil Procedure (Rule), restraining and enjoining Book-Cellar from:
... removing or in any manner interfering with any obscene motion picture film or obscene pictorial publication or other item directly related to the conduct or maintenance of the premises described in exhibit A attached hereto, including but not limited to the films and publications described in exhibit B attached hereto until further order of this court.[2]
Book-Cellar answered and counterclaimed and also obtained leave of court to add as additional counterdefendants William E. Farrell, in his official capacity as Attorney for the City of Glendale, and George Renner individually and in his official capacity as Mayor of the City. The counterclaim alleged that the nuisance abatement statutes, pursuant to which the complaint had been filed, were unconstitutional both on their face and as applied and requested that enforcement of the statutes be enjoined. The counterclaim also requested an award of damages for violation of Book-Cellar's civil rights pursuant to 42 U.S.C. § 1983 and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.
On July 2, 1981, the trial court quashed the show cause order relating to the requested preliminary injunction.[3] The court also granted Book-Cellar's motion to quash the temporary restraining order on both procedural and substantive grounds. The court first noted that the temporary restraining order did not comply with Rule 65, and that there was no basis in the record for concluding that irreparable injury would result if the temporary restraining order were not issued. The court further found that First Amendment considerations required that the temporary restraining order be dissolved because it either amounted to a prior restraint on the sale or exhibition of allegedly obscene materials or was unconstitutionally vague in failing to fairly apprise Book-Cellar as to the conduct which was prohibited.
The trial court thereafter granted Book-Cellar's motion to dismiss the complaint finding that the nuisance abatement statutes were unconstitutional on several grounds. The court found that the ex *528 parte temporary restraining order provision, A.R.S. § 12-814(B), and the preliminary injunction provision, A.R.S. § 12-814(E), were unconstitutional in authorizing a prior restraint without assuring a prompt final judicial determination of obscenity, and that they were unconstitutionally vague with regard to the conduct which may be restrained. The court further found that the final judgment provision, A.R.S. § 12-815(B), and the provision for an order of abatement, A.R.S. § 12-816, were overbroad and constituted an illegal prior restraint because they authorized the seizure and destruction of items which had not been adjudged to be obscene.
Book-Cellar then filed a motion for summary judgment on its counterclaim, waiving damages with the exception of nominal damages, and seeking an award of attorney's fees. The trial court found, as a matter of law, that Book-Cellar was entitled to one dollar as nominal damages under 42 U.S.C. § 1983 and awarded attorney's fees in the sum of $7,000 pursuant to 42 U.S.C. § 1988. A formal judgment was thereafter filed and this appeal followed in a timely manner.
PREFATORY PRINCIPLES OF LAW
We begin by emphasizing that there is a strong presumption in favor of the constitutionality of a legislative enactment, and the party challenging its constitutionality bears the burden of proving that the statute infringes upon a constitutional guarantee or that it violates a constitutional principle. State v. Yabe, 114 Ariz. 89, 559 P.2d 209 (App. 1977). We will not declare an act of the legislature unconstitutional unless we are satisfied beyond a reasonable doubt that the act is in conflict with the federal or state constitutions. Chevron Chemical Co. v. Superior Court, 131 Ariz. 431, 641 P.2d 1275 (1982); Litchfield Elementary School Dist. v. Babbitt, 125 Ariz. 215, 608 P.2d 792 (App. 1980). In interpreting a statute the courts should, if possible, give the statute a constitutional construction. Mardian Constr. Co. v. Superior Court, 113 Ariz. 489, 557 P.2d 526 (1976). It is our duty to uphold statutes, if their language will permit, even though the statute may not be "artfully drawn". State v. Grijalva, 111 Ariz. 476, 533 P.2d 533, cert. denied, 423 U.S. 873, 96 S.Ct. 141, 46 L.Ed.2d 104 (1975). Judicial interpretation adds meaning to a statute as certainly as if the words were placed there by the legislature. State v. Bateman, 113 Ariz. 107, 547 P.2d 6 (1976), citing Wainwright v. Stone, 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973).
We also stress that obscenity is not within the area of constitutionally protected speech or press and may therefore be regulated by the state. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). The state can impose regulations on the use of obscenity in local commerce and in all places of public accommodation, so long as those regulations do not run afoul of specific constitutional prohibitions. Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973). Moreover, the Supreme Court in Kingsley Books, Inc. v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957) expressly approved the state's use of the injunctive remedy to restrain a book dealer from displaying or distributing particular materials which had been adjudged obscene:
We need not linger over the suggestion that something can be drawn out of the Due Process Clause of the Fourteenth Amendment that restricts New York to the criminal process in seeking to protect its people against the dissemination of pornography. It is not for this Court thus to limit the State in resorting to various weapons in the armory of the law. Whether proscribed conduct is to be visited by a criminal prosecution or by a qui tam action or by an injunction or by some or all of these remedies in combination, is a matter within the legislature's range of choice.
354 U.S. at 441, 77 S.Ct. at 1327-28. Thus, the states have considerable leeway in attempting to regulate the dissemination of obscenity.
*529 While punishment after the fact is clearly permissible for purveyors of illegal pornography, the courts have exhibited a marked repugnance for restraining even unprotected obscenity prior to a determination of its obscene character. The Supreme Court has said that "[a]ny system of prior restraints of expression comes to this court bearing a heavy presumption against its constitutional validity." Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584, 593 (1963). In this regard, the Supreme Court has held that there are three fundamental procedural requirements which must be met prior to the imposition of any restraints upon the dissemination of obscenity:

First, the burden of instituting judicial proceedings, and of proving that the material is unprotected [obscene], must rest on the censor.

Second, any restraint prior to judicial review can be imposed only for a specified brief period and only for the purpose of preserving the status quo.

Third, a prompt final judicial determination must be assured.
Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 560, 95 S.Ct. 1239, 1247, 43 L.Ed.2d 448 (1975).
The relevant Arizona nuisance abatement statutes provide for a number of procedural steps, the constitutionality of which were challenged by Book-Cellar in the trial court and are similarly at issue on appeal. We will consider each in turn.
THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER
A.R.S. § 12-814(B) provides that the court may issue an ex parte restraining order "restraining the defendant from removing or in any manner interfering with" the alleged obscene material.
Book-Cellar contends that this statute unconstitutionally restrains the sale or exhibition of allegedly obscene material prior to an adversarial hearing on whether the material is in fact obscene. In presenting this argument, Book-Cellar relies on A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964) in which the court struck down as an unconstitutional prior restraint of freedom of speech, an ex parte proceeding permitting the police to seize every copy of a publication. The court found the proceeding to be constitutionally defective because the state effectively restrained the circulation of the publication prior to a hearing. We find this case inapplicable. A.R.S. § 12-814(B) does not provide for the seizure of any materials, rather it only permits the court to "restrain" a defendant from "removing or in any manner interfering with" the alleged obscene material. In effect, then, while the court has authority to enjoin a defendant from removing his inventory in its entirety it cannot interfere with continued exhibitions or sales.
We find that the purpose of A.R.S. § 12-814(B) is to preserve evidence. In that regard, an order which required the retention of at least one item of each allegedly obscene film or publication would be in furtherance of the statutory purpose and would not create a constitutional dilemma. See Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973). Not until the issuance of a preliminary injunction pursuant to A.R.S. § 12-814(E) may the court restrain a defendant from "continuing the nuisance" by prohibiting continued exhibitions or sales of the materials alleged to be obscene.
Book-Cellar's reliance on Carroll v. Princess Anne, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968) is also misplaced. That case involved an ex parte proceeding where the trial court enjoined a scheduled rally. Such a total restraint on a First Amendment activity more closely resembles the situation in Quantity of Copies of Books where the court enjoined the parties from continuing their operation in any manner. Since we find that a temporary restraining order properly issued pursuant to A.R.S. § 12-814(B) cannot enjoin the exhibition or sale of any materials, an order so issued pursuant to this statute does not act as a form of censorship and would not, therefore, be considered a prior restraint.
*530 Although we find the statute allowing for the issuance of a temporary restraining order to be constitutional as merely providing for the preservation of evidence and therefore the restraining order which was issued in this case did not constitute a prior restraint, we nevertheless affirm the order of the trial court which dissolved the restraining order.
Rule 65(h) provides, in relevant part, as follows:

Form and Scope of Injunction or Restraining Order. Every order granting an injunction and every restraining order shall set forth the reasons for its issuance and shall be specific in terms. It shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained...
It is clear that the temporary restraining order was procedurally defective in that it failed to comply with the mandatory language of Rule 65(h). The order was not specific in its terms and clearly failed to apprise Book-Cellar of the conduct which was prohibited. The order was, therefore, properly dissolved by the trial court. Common Cause v. Nuclear Regulatory Commission, 674 F.2d 921 (D.C. Cir.1982); Brumby Metals, Inc. v. Bargen, 275 F.2d 46 (7th Cir.1960).
THE STATUTORY AUTHORITY FOR A PRELIMINARY INJUNCTION
A.R.S. § 12-814(E) permits the court to issue a preliminary injunction against the maintenance of a nuisance after the plaintiff makes a showing that there is sufficient evidence to establish that a nuisance (the sale of obscene material) exists and that the plaintiff is likely to prevail at trial on the merits. Book-Cellar first argues that this injunctive remedy results in a prior restraint on free speech since it prevents the continued exhibition and distribution of materials not yet finally determined to be obscene. We agree that a preliminary injunction issued pursuant to this statute constitutes a prior restraint.
Initially we observe that not all restraints on speech are invalid. Time Film Corp. v. Chicago, 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403 (1961). A system of prior restraint does, however, come to the court bearing a heavy presumption against its constitutional validity. Bantam Bookstores, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). The Supreme Court has approved the imposition of prior restraints only where they are accompanied by adequate procedural safeguards against the dangers of censorship through a prompt and final judicial determination of obscenity. Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1964).
Book-Cellar contends that A.R.S. §§ 12-814 and 12-815 suffer from the same absence of procedural safeguards as did a Texas nuisance statute which the Supreme Court struck down in Vance v. Universal Amusement Co., 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980). In that case the Court agreed with the Court of Appeals' analysis of the statute and found an "absence of any special safeguards governing the entry and review of orders restraining the exhibition of named or unnamed motion pictures..." 445 U.S. at 317, 100 S.Ct. at 1162. Specifically, the Court of Appeals had found the statute unconstitutional because it permitted the state to obtain a preliminary injunction of indefinite duration on the exhibition of motion pictures that had not finally been adjudicated obscene under the Texas statute. The trial court could issue a preliminary injunction without a ruling on the merits and the burden of proof by the plaintiff at the preliminary injunction stage of the proceedings was substantially less from that which would be imposed at a final hearing on the merits. Accordingly the issuance of a preliminary injunction did not amount to a final judicial determination of obscenity.
While A.R.S. § 12-815(A) imposes no definite time limitations on when the permanent injunction must be heard, we note that A.R.S. § 12-815(A) does require that an action instituted under A.R.S. §§ 12-811 et seq., shall have precedence over all other *531 cases except criminal actions, election contests, injunctions, habeas corpus proceedings, temporary restraining orders and juvenile proceedings. We further observe that A.R.S. § 12-814(D) provides as follows:
Before or after the commencement of the hearing of an application for a preliminary injunction, the court on application of the defendant, may order that the trial of the action on the merits be advanced and consolidated with the hearing on the application for a preliminary injunction. Evidence which would be admissible at trial shall become a part of the record and need not be reintroduced at the trial.
Unlike the Texas statute which treated these nuisance actions no differently than other civil actions, the Arizona statute explicitly evidences a legislative intent that the nuisance action is to be promptly resolved.
Book-Cellar argues that simply providing for priority treatment does not insure the constitutionally required prompt judicial review. It also argues that the statute cannot be saved from its lack of a requirement of prompt final adjudication by judicial construction.[4] Although it is not for this court to rewrite the statute, we nevertheless, have a duty to give the statute a constitutional construction if possible. Mardian Constr. Co. v. Superior Court, 113 Ariz. 489, 557 P.2d 526 (1976). The United States Supreme Court has recognized this duty in construing procedures involving obscenity laws:
... the exhibitor must be assured by statute or authoritative judicial construction that censors must resort to the courts within a specified brief period and that such resort must be followed by a prompt final judicial decision ...
Freedman, 380 U.S. at 59, 85 S.Ct. at 739 (emphasis added).
A construction of A.R.S. § 12-811 et seq., imposing a specific time limit would not require us to decide issues of policy appropriately left to the legislature nor would it require us to raise questions upon which the legislature possesses special expertise. The legislature has already indicated its desire for promptness. We see no reason for declining to impose a maximum time limit consistent with the legislative purpose which would also obviate the constitutional objections raised by Book-Cellar. Further, we find that precedent exists for judicially imposing such necessary time limitations. In State ex rel. Berger v. McCarthy, 113 Ariz. 161, 548 P.2d 1158 (1976) our Supreme Court, in deciding the constitutionality of a statute governing notice of seizure of vehicles used to unlawfully transport narcotic drugs and notice of intention to institute forfeiture proceedings, imposed a 20 day limitation on the law enforcement agency within which to file its notice in order that the statute not be declared unconstitutional for failure to provide due process.
The United States Supreme Court determined in United States v. Thirty-Seven Photographs, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822, reh. denied, 403 U.S. 924, 91 S.Ct. 2221, 29 L.Ed.2d 702 (1971) that in order to further the legislative purpose of the statute prohibiting the importation of obscene materials and to save it from a declaration of unconstitutionality, the Court would construe the statute by imposing constitutional time limits for commencement and completion of judicial forfeiture proceedings. The Court concluded that no more than sixty days could lapse from the filing of the action to the final *532 decision, finding that such a time limitation would not impose an undue hardship on the government or on the courts. Of particular importance to the case at bench, the Supreme Court expressly held that "constitutionally permissible limits may vary in different contexts; in other contexts, such as a claim by a state censor that a movie is obscene, the Constitution may impose different requirements with respect to the time between the making of the claim and the institution of judicial proceedings or between their commencement and completion than in the context of a claim of obscenity made by custom officials at the border." 402 U.S. at 374, 91 S.Ct. at 1407. Accordingly, while it may be necessary to judicially impose specific time limitations on the amount of time that may lapse between the issuance of a preliminary injunction and the trial court's ruling on the permanent injunction, we are not constrained by the 60 day limitation between the filing of the action and final judgment imposed in Thirty-Seven Photographs.
As noted herein, prior restraints pass constitutional muster only where there are adequate procedural safeguards designed to obviate the dangers of the censorship system. Among other safeguards, a prompt and final judicial determination must be assured. Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975). In order to obviate any deficiency in the Arizona statutes, we hereby impose a maximum 60 day limitation on the time period that may lapse between the issuance of a preliminary injunction pursuant to A.R.S. § 12-814 and the court's final adjudication of the underlying action on the merits. However, no action will be invalidated for delay which has been occasioned by or on behalf of the defendant. Our review of the cases dealing with this issue does not reveal a specific number of days that the courts have found to be constitutional. Rather, they only required that there be a prompt and final judicial determination of obscenity. We find that a final judicial determination made by the end of 60 days from the issuance of a preliminary injunction satisfies that constitutional requirement. If that time is exceeded, the preliminary injunction must be quashed. The action may, of course, proceed on the merits.
CLOSURE AS A REMEDY
Book-Cellar next interprets the statutes as permitting the trial court to order the closure of an entire business or "place" if it finds that an obscene item has been sold or distributed therein. We disagree and again decline to give the statutes such an unconstitutional construction.
A.R.S. § 12-811 et seq., provides that upon finding the existence of a nuisance the court shall enjoin the defendant from further maintaining the nuisance. The statute on its face makes no provision for "closure" as a remedy and, similarly, the statutes construed as a whole do not support Book-Cellar's interpretation. By arguing that closure is a remedy available to the court, Book-Cellar must assume that the nuisance involved is the business or place whereas A.R.S. § 12-811(2) defines "nuisance" as any place for the sale or exhibition of obscene motion picture films or pictorial publications. The statutory language makes it clear that the nuisance is the exhibition or sale of obscene materials and not the place. Accordingly, the proper remedy to abate the nuisance is an injunction against the business prohibiting further sales or exhibitions of materials determined to be obscene.
DESIGNATION OF OBSCENE MATERIALS AND RELATED ITEMS AS CONTRABAND
Book-Cellar next argues that A.R.S. § 12-817 cannot constitutionally classify obscene materials as contraband. We find no merit to this argument. The Supreme Court in United States v. Thirty-Seven Photographs, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971) specifically held that since obscenity is not within the scope of First Amendment protection, Congress may declare it contraband. The court has also held that a person has no property *533 rights in items determined to be contraband. See United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951).
Book-Cellar also contends that A.R.S. § 12-816 is unconstitutional insofar as it provides for the destruction of items "directly related to (the obscene materials) including, but not limited to, promotional material for such film or publication and printing plates used to print the publication." The state's position, although somewhat unclear, is basically that these items constitute "derivative contraband" and, as such, the state can order them destroyed. The court in State v. A Motion Picture Entitled "The Bet", 219 Kan. 64, 547 P.2d 760 (1976) rejected the state's argument on the ground that such a concept cannot be constitutionally utilized if it has the effect of imposing prior restraints upon freedom of speech or press. We agree and therefore find that the portion of A.R.S. § 12-816 which permits the destruction of promotional materials constitutes an unconstitutional prior restraint since the statute makes no provision for a judicial review of the materials to determine whether they are also obscene. Although we hold that portion of the statute to be unconstitutional, we nevertheless uphold the remainder of this statute.
SEVERANCE
The entire statute should not be declared unconstitutional if the constitutional portions can be separated. Cohen v. State, 121 Ariz. 6, 588 P.2d 299 (1978). The test for severability is whether the elimination of a part of the statute will result in the remaining sections making little sense in expressing the intent of the legislature. Barrows v. Garvey, 67 Ariz. 202, 193 P.2d 913 (1948). In the absence of legislative history, we presume that the legislature, by enacting this statute, intended to eliminate materials which have been adjudicated obscene from public access. The excision of "promotional materials" from A.R.S. § 12-816 does not destroy the effectiveness of the statute since it neither hinders the destruction of obscene materials nor prevents the elimination of equipment which can be used solely for the purpose of reproducing obscene materials. As to the latter point we note that if the statute allowed for the destruction of "neutral" equipment such as printing presses, bookracks, magazine stands, recording or projection equipment and the like, the statute would be unconstitutional as permitting a prior restraint of freedom of expression. Items of neutral equipment which may be used in the future for legitimate forms of expression may not be destroyed because of past transgressions of obscenity laws. State v. A Motion Picture Entitled "The Bet", 547 P.2d at 771. Accordingly we limit the reach of A.R.S. § 12-816 to items that have previously been adjudicated obscene and items which directly reproduce and can only reproduce obscene materials such as negatives of photographs and films and printing plates for books and magazines.
THE REMAINING ISSUES
By reason of our resolution of this case, we find it unnecessary to address the other issues raised in the briefs.[5] Upon remand, Book-Cellar may reurge the issue of attorney's fees incurred solely for the purpose of procuring dissolution of the temporary restraining order. See State v. Williams, 12 Ariz. App. 498, 472 P.2d 109 (1970); Hammond v. A.J. Bayless Markets, Inc., 58 Ariz. 58, 117 P.2d 490 (1941).
CONCLUSION
For the foregoing reasons, the order of the trial court dissolving the temporary restraining order is affirmed; the order dismissing the state's complaint and the summary judgment granted in favor of Book-Cellar on its counterclaim are reversed; and this matter is remanded to the *534 trial court for proceedings consistent with this opinion.
JACOBSON, C.J., and CORCORAN, J., concur.

APPENDIX

OBSCENE MOVIE AND OBSCENE PICTORIAL PUBLICATION ABATEMENT
§ 12-811. Definitions
In this article, unless the context otherwise requires:
1. "Motion picture film" means any film or plate negative, film or plate positive, film or tape designed to be projected on a screen for exhibition, or films, glass slides or transparencies, either in negative or positive form, designed for exhibition by projection on a screen.
2. "Nuisance" means any place for the sale or exhibition of obscene motion picture films or pictorial publications.
3. "Obscene motion picture film or obscene pictorial publication" means any motion picture, film, video reproduction or pictorial publication which would constitute an obscene item as defined in § 13-3501.
4. "Person" means any individual, association, partnership, corporation, trustee, lessee, agent or assignee.
5. "Pictorial publication" means any book, magazine or pamphlet containing one or more drawings, pictures, photographs or illustrations.
6. "Place" means any building, enclosure or any separate part or portion thereof whether permanent or not or the ground itself.
§ 12-812. Nuisance
A. Any person who maintains, establishes or conducts a nuisance, or aids or abets therein, and the agent or lessee of any interest in any such nuisance together with the persons in control of any such nuisance by any such agent or lessee can be enjoined from maintaining a nuisance pursuant to this article.
B. Upon receiving notice pursuant to § 12-814, such persons are deemed to have knowledge of the nuisance and are liable for its maintenance.
§ 12-813. Abatement of nuisance
If a nuisance exists, the attorney general, the county attorney of the county in which such nuisance exists or the city attorney of the city in which such nuisance exists may bring an action in the name of the state to abate such nuisance and to enjoin the person maintaining the nuisance from further maintenance.
§ 12-814. Procedure in injunction action
A. An action instituted pursuant to § 12-813 shall be brought in the superior court of the county in which the property is located. At the commencement of the action a verified complaint alleging the facts constituting the nuisance shall be filed in the office of the clerk of the court.
B. After the filing of the complaint, application for a preliminary injunction may be made to the court which shall grant a hearing within twenty days after the filing. Where such application for a preliminary injunction is made, the court may, on application of the complainant, issue an ex parte restraining order, restraining the defendant from removing or in any manner interfering with any obscene motion picture film or obscene pictorial publication or other item directly related to the conduct or maintenance of the place where such nuisance is alleged to exist and which is alleged in the complaint to constitute a nuisance until further order of the court. The restraining order may be served by handing to and leaving a copy of such order with the manager or person in charge of such place. Any violation of such restraining order is a contempt of court.
C. A copy of the complaint, together with a notice of the time and place of the hearing of the application for a preliminary injunction shall be served upon the defendant at least fifteen days before such hearing.
*535 D. Before or after the commencement of the hearing of an application for a preliminary injunction, the court on application of the defendant, may order that the trial of the action on the merits be advanced and consolidated with the hearing on the application for a preliminary injunction. Evidence which would be admissible at trial shall become a part of the record and need not be reintroduced at the trial.
E. If upon hearing the allegations of the petition it appears to the court that there is sufficient evidence to establish that a nuisance as alleged in the complaint exists and that the plaintiff is likely to prevail at the trial on the merits, the court shall issue a preliminary injunction without additional bond restraining the defendant from continuing the nuisance. Such order shall also continue in effect for such further period of the restraining order if already issued, or, if not issued, it shall include an order restraining for such period the removal or interference with any obscene motion picture film or obscene pictorial publication or other item directly related to the obscene motion picture film or obscene pictorial publication including, but not limited to, promotional material for such film or publication and printing plates used to print such publication.
§ 12-815. Priority of action; evidence; costs
A. An action instituted pursuant to this article shall have precedence over all other cases except criminal actions, election contests, injunctions, habeas corpus proceedings, temporary restraining orders and juvenile proceedings.
B. If the existence of the nuisance is established upon the trial, a judgment shall be entered which shall enjoin the defendant from further maintaining the nuisance at the place complained of and the defendant from maintaining such nuisance elsewhere. Such judgment shall also provide that the defendant reimburse the plaintiff for the plaintiff's expenses in bringing the action, including attorney's fees and court costs.
§ 12-816. Content of judgment and order
If the existence of a nuisance is admitted or established in an action pursuant to this article, an order of abatement shall be entered as a part of the judgment in the case. The order of abatement shall direct the removal from the place of the motion picture or pictorial publication found to be obscene and items directly related to such motion picture film or pictorial publication and shall direct the sheriff of the county in which the action was brought to seize and destroy such film, publication and other items directly related to such film or publication including, but not limited to, promotional material for such film or publication and printing plates used to print the publication.
§ 12-817. Civil penalty; forfeiture; accounting
A. Obscene motion picture films and obscene pictorial publications pursuant to this article are contraband and are not subject to any property rights.
B. Any and all monies received in payment for obtaining or viewing any obscene motion picture films and obscene pictorial publications are subject to forfeiture to the county in which the abatement action is brought as restitution for damages done to the public welfare, public health and public morals. Such monies may be traced to and shall be recoverable from those persons as set forth in § 12-812 who have knowledge of the nuisance, from and after the issuance of a preliminary injunction against the conduct of such persons pursuant to § 12-814.
C. Upon the issuance of a judgment pursuant to § 12-815, subsection B, the defendants named in such judgment shall make an accounting of all monies received by them in payment for obtaining or viewing obscene motion picture films or obscene pictorial publications subject to such judgment.
§ 12-818. Petition by commercial operators or qualified electors for action
If the attorney general, a county attorney or a city attorney receives a petition *536 alleging the existence of a nuisance subject to the provisions of this article and determines that there are reasonable grounds to believe that such a nuisance exists, an action to abate such nuisance shall be brought forthwith. Such petition may be signed by only persons who operate commercial enterprises within a one-half mile radius of the location of the alleged nuisance or who are qualified electors whose voting address is within a one-half mile radius of the location of the alleged nuisance. Such petition must be signed by at least one hundred of the persons eligible to sign or fifty per cent of the persons eligible to sign, whichever is greater.
NOTES
[1] For ease of reference the statutes are reproduced in their entirety and are included as an appendix to this opinion.
[2] Exhibit "A" listed the addresses of Book-Cellar's various places of doing business and Exhibit "B" listed the titles of certain movies and pictorial publications.
[3] No preliminary injunction was ever issued.
[4] We note that the United States Court of Appeals for the Ninth Circuit, finding an absence of the necessary procedural safeguards, has struck down, on procedural grounds, a similar statute from the State of Washington. Spokane Arcades, Inc. v. Brockett, 631 F.2d 135 (9th Cir.1980), aff'd, 454 U.S. 1022, 102 S.Ct. 557, 70 L.Ed.2d 468 (1981). We further note, however, that the Spokane Arcades decision has been criticized as making little effort to construe Washington's statute in a constitutional manner and that the defects identified in Spokane Arcades may be cured by appropriate construction. See State ex rel. Kidwell v. U.S. Marketing, Inc., 102 Idaho 451, 631 P.2d 622, appeal dismissed by stipulation of the parties, 455 U.S. 1009, 102 S.Ct. 1649, 71 L.Ed.2d 828 (1981).
[5] It appears that George Renner and William E. Farrell were joined as counterdefendants solely on the basis of the provisions of 42 U.S.C. 1983. We do not reach the propriety of such a joinder if this section remained applicable.